UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Elaine Chao, Secretary of Labor,<br>United States Department of Labor,<br><br>      Plaintiff,<br>v.<br><br>Gary Bauerly, LLC, d/b/a Watab<br>Hauling, and Gary Bauerly, an<br>individual,<br><br>      Defendants. | Civ. File No. 03-6200 (PAM/RLE)<br><br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, Defendants' Motion is denied.

**BACKGROUND**

Plaintiff Elaine Chao is the Secretary of Labor for the United States Department of Labor ("DOL"), the federal agency charged with administering and enforcing the Fair Labor Standards Act ("FLSA"). Defendant Gary Bauerly, LLC is the holding company that owns and operates Defendant Watab Hauling. Defendant Gary Bauerly is the chief executive officer and majority owner of Gary Bauerly, LLC.

**A. Defendants' Operations**

Defendants operate a trucking company that hauls construction materials, such as gravel and concrete, from a pit or other loading point to construction sites. Defendants primarily operate out of two locations in Minnesota: Sauk Rapids and Minneapolis (collectively "Parking Lots"). Drivers employed by Defendants make repeated trips to load and unload the construction materials.

1.      Regular Activities

On a typical day, the drivers are required to report to an assigned Parking Lot to pick up the trucks that they will be driving. Upon arrival at the Parking Lots, the drivers conduct a pre-trip inspection of the trucks. The parties dispute what the pre-trip inspection entails. Defendants contend that the drivers simply take a two to three minute walk around the truck and then inspect the operation of the truck while driving. The DOL submits that pre-trip inspections usually take between five and twenty minutes, at which time the drivers check various operating systems, such as the lights, tires, oil level, and brakes, to ensure that the truck is in working condition. Based on their inspection, the drivers complete a checklist of items that need repair. The drivers also sometimes grease the trucks to ensure that the dump mechanism works properly, which takes between five and forty-five minutes. Finally, the drivers are sometimes required to fuel their trucks. Fueling takes between five and fifteen minutes.

After performing the pre-trip activities, the drivers drive from the Parking Lots to the first job site, where they pick up their initial load. The drive time from the Parking Lots to the first job site varies from fifteen minutes to one and one-half hours, depending on the distance and traffic. After arriving at the job site, the drivers sometimes must wait in line to pick up their loads. Waiting times range from ten to fifty minutes. After dumping their last load, the drivers return their trucks to the Parking Lots. Defendants contend that the drivers are not responsible for any tasks once they return the trucks. Conversely, the DOL maintains that the drivers sometimes must fuel, grease, and wash the trucks at that time.

Prior to October 2002, Defendants only paid the drivers for actual hauling time. Thus, they did not pay the drivers for the time spent conducting the pre-trip inspection, greasing, or fueling the trucks. Likewise, they did not pay the drivers for the time spent driving from the Parking Lots to the job site, for the time that passed while the drivers waited for their loads, for the travel time back to the Parking Lots, or for any of the tasks completed after the drivers dumped their last load.

### 2. Other Activities

Some drivers also performed other duties in addition to hauling. For example, when a truck broke down, the driver was required to stay with the truck or drive the truck to a maintenance shop. Drivers were not paid for the time spent driving the truck to and from the maintenance facility, or for the time waiting for the truck to be serviced. In addition, some drivers were responsible for driving a fuel truck between Minneapolis and Sauk Rapids, and fueling trucks. Those drivers were not paid for that time. In addition, a job was rained out occasionally, and drivers were not paid for pre- and post-shift activities, drive time to and from the job site, or time spent waiting for the weather to clear.

**B.    DOL Audit**

The DOL audited Defendants for the period of May 19, 2001, to October 12, 2002. After reviewing records and interviewing employees, the DOL investigator determined that sixty-four drivers were performing work for which they were not paid. The investigator determined that $84,880.55 in overtime back wages were due.

**C. This Action**

In this action, the DOL alleges that Defendants violated the FLSA by (1) failing to pay employees the minimum wage for all hours worked and (2) failing to pay employees overtime for all hours worked in excess of forty hours per week. It seeks injunctive relief, as well as compensatory and liquidated damages.

Defendants advance two arguments in favor of summary judgment. First, they contend that the undisputed facts show that the employees were paid for all hours worked. Second, Defendants maintain that the FLSA's overtime pay requirements do not apply by virtue of the motor carrier exemption set forth in 29 U.S.C. § 213(b).

**DISCUSSION**

**A. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material

fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.      29 U.S.C. § 206(a)**

The DOL claims that Defendants failed to compensate the drivers for all hours worked. The FLSA requires employers to pay each of their employees the minimum wage rate of $5.15 per hour. 29 U.S.C. § 206(a)(1). The calculation of hours worked by an employee depends on whether the employee's time is spent predominantly for the employer's or the employee's benefit. See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944). Time spent on activities performed for the benefit of the employer are compensable. Id. However, time spent on activities undertaken for the employee's own convenience, not required by the employer, or not necessary for the performance of their duties for the employer are not compensable. See Reimer v. Champion Heartland Corp., 258 F.3d 720, 725 (8th Cir. 2001) (plaintiffs' off-premises, on-call hours were not predominantly for the benefit of the employer because the employer imposed very few restrictions on the plaintiffs during those hours).

Pre-shift and post-shift activities are compensable if the activities are "an integral and indispensable part of the principal activities for which covered workmen are employed." Steiner v. Mitchell, 350 U.S. 247, 256 (1956). Pre-trip safety inspection activities are an integral part of the driving activity and are therefore considered compensable. Barrentine v. Ark.-Best Freight Sys., Inc., 750 F.2d 47, 50 (8th Cir. 1984). Similarly, time spent loading,

unloading, and picking up and returning trucks to their original locations is all compensable. Herman v. Rich Kramer Constr., Inc., 163 F.3d 602, 602 (8th Cir. 1998) (table op.) (driving to job sites is compensable as a principal activity); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721, 725 (5th Cir. 1961) (activities of servicing truck each morning, driving it from truck yard to prime contractor's plant for loading, waiting in line for loading, returning to truck yard from place where last load was dumped each day, and cleaning up and refueling truck were integral part of and indispensable to main job of truck drivers); Mitchell v. Stewart Bros. Constr. Co., 184 F. Supp. 886, 894-95 (D. Neb. 1960) (pre- and post-trip activities indispensable part of the principal activities for road work machine operators and therefore compensable); 29 C.F.R. § 785.15 (waiting is an integral part of the job when the employee is unable to use the time effectively for his own purposes).

Defendants maintain that the drivers were paid for every hour recorded, and that it was the drivers' responsibility to ensure that all compensable time was recorded. However, the DOL submits evidence that drivers performed pre- and post-trip activities for which they were not compensated. In addition, some drivers aver that Defendants instructed them not to record pre-shift hours worked and that they were paid only for time hauling construction materials.

Because a factual dispute exists as to whether Defendant paid the drivers for all compensable time worked, Defendants' Motion for Summary Judgment as it relates to the 29 U.S.C. § 206(a)(1) claim is denied.

**C.    29 U.S.C. § 207(a)**

The DOL maintains that the time the drivers worked off the clock caused the drivers to

work more than forty hours per week.  It has computed that Defendants owe $84,880.55 in overtime back wages during the audit period.  Defendants contend that the drivers fall within the Motor Carrier Act and are therefore exempt from the overtime requirements of the FLSA.

The overtime provision of the FLSA requires an employer to pay an employee one and one-half times his regular rate of pay for hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a).  However, Congress expressly exempted from the overtime provision employees for whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service under the Motor Carrier Act.[1]  29 U.S.C. § 213(b)(1).  Courts narrowly construe the motor carrier exemption against the employer.  Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392-94 (1960).  Thus, the employer bears the burden of proving that the exemption applies clearly and unmistakably.  Id.

Defendants argue that the motor carrier exemption applies for two reasons.  First, they maintain that the drivers were subject to regulation by the Department of Transportation ("DOT").  Second, they contend that the drivers are actually regulated by the DOT.

1.      Subject to Regulation

The Secretary of Transportation need not actually exercise its power to regulate under

---

[1] Congress enacted the Motor Carrier Act to promote efficiency, economy, and safety in the motor transportation industry.  United States v. Am. Trucking Ass'n, Inc., 310 U.S. 534, 538-39 (1940).  To preserve the safety program promoted by the Motor Carrier Act, Congress prohibited dual regulatory jurisdiction of the Department of Transportation and the DOL by exempting from the FLSA overtime provision those employees for whom the Department of Transportation may set maximum hours of service.  Levinson v. Spector Motor Serv., 330 U.S. 649 (1947).

the Motor Carrier Act. Morris v. McComb, 332 U.S. 422, 437-38 (1947). Rather, the motor carrier exemption applies so long as the Secretary of Transportation has authority over a particular category of employees. Id. at 434; Levinson v. Spector Motor Serv., 330 U.S. 649, 673 (1947); Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 (1944); see also 29 C.F.R. § 782.1(a). Thus, to establish the applicability of the motor carrier exemption, Defendants must show that: (1) the Secretary of Transportation had the authority to establish the drivers' qualifications and maximum hours; (2) the drivers engaged in activities that directly affected the safe operation of motor vehicles on public highways; and (3) the drivers transported passengers or property on public highways in interstate commerce. See 29 C.F.R. § 782.2(a)-(b)(2).

The Secretary of Transportation may establish the qualifications and maximum hours for all motor carriers. 49 U.S.C. § 31502(b). Defendants clearly are motor carriers, as they provide motor vehicle transportation for compensation. 49 U.S.C. § 13102(12). Moreover, there can be no dispute that the drivers were engaged in activities that directly affect the safety and operation of the trucks. See Benson v. Universal Ambulance Serv., Inc., 675 F.2d 783, 786 (6th Cir. 1982); 29 C.F.R. § 782.3. Thus, the threshold issue is whether Defendants operated in interstate commerce during the relevant time period, thereby falling within the ambit of the DOT. See 29 C.F.R. § 782.2(d) (the exemption requires drivers to be engaged in interstate transportation).

The DOT has explained what evidence is needed to establish jurisdiction:

The carrier must be shown to have engaged in interstate commerce within a

8

>   reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof . . . that interstate business had been solicited.  If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs.  Satisfactory evidence would be statements from drivers and carriers, and any employment agreements.

Application of the Federal Motor Carrier Safety Regulation, 46 Fed. Reg. 37902-02 (July 23, 1981) (to be codified at 49 C.F.R. Part 390).

Participation in interstate commerce need not be significant.  Even minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the DOT.  See 29 U.S.C. § 782.2(b)(3).  In fact, even if the driver has not personally driven in interstate commerce, he will be subject to the jurisdiction of the DOT if the driver could be reasonably expected to do interstate driving.  Levinson, 330 U.S. at 674-75 ("It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power to establish reasonable requirements with respect to qualification, maximum hours of service, safety of operation and equipment."); 29 C.F.R. § 782.1(a); 46 Fed. Reg. 37902-02 ("even a minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the" DOT).  In determining whether the drivers had reasonable expectations of interstate driving, courts look at whether the carrier-employer conducted interstate work or whether the carrier-employer actively attempted to obtain

interstate work during the period in question.[2]

For example, in Morris v. McComb, 332 U.S. 422 (1947), Starrett v. Bruce, 391 F.2d 320 (10th Cir. 1968), and Brennan v. Schwerman Trucking Co. of Va., Inc., 540 F.2d 1200 (4th Cir. 1976), courts found jurisdiction over drivers even though the drivers had not driven in interstate commerce.  Jurisdiction was based on the probability of the drivers being assigned to interstate runs in the regular course of their employment.

In Morris, the United States Supreme Court held that the motor carrier exemption applied to all drivers and mechanics of a small common carrier, even though the interstate carrier services rendered by the company constituted less than four percent of its total carrier services.  The Morris Court based its decision on the fact that the interstate routes that were serviced were assigned indiscriminately among all the drivers, so that all of the carrier's drivers were eligible to receive an interstate route at some point throughout the year.  Thus, two drivers who had never driven interstate during the six-month period of their employment were found to be subject to the jurisdiction of the DOT because of their likelihood of performing interstate work.  332 U.S. at 432-36.

In Starrett, the employee did not drive interstate during the ten-month period in question.  Nevertheless, the Tenth Circuit Court of Appeals held that the driver was subject to the jurisdiction of the DOT because there was a reasonable expectation that he could have been

---

[2] Evidence that an employee drove in interstate commerce or was subject to being used in interstate commerce is sufficient to exempt the employee for a four month period.  See 46 Fed. Reg. 37902-02.

called on to drive interstate during that time period. The expectation existed because the carrier-employer held interstate authority, advertised for interstate work, indiscriminately assigned drivers to that work, and would have had to perform the interstate transportation had the business been presented. 391 F.2d at 323-24.

Likewise, in Brennan, the Fourth Circuit Court of Appeals found that a carrier that held itself out as available for interstate cartage, solicited interstate business, and handled interstate shipments was subject to the jurisdiction of the DOT and therefore exempted from the provisions of the FLSA. It held so despite the fact that the carrier had failed in its efforts to solicit interstate business during the relevant time period. 540 F.2d at 1203-04; see also Smith v. United Parcel Serv., Inc., 890 F. Supp. 523, 526 (S.D. W. Va. 1995) ("The focus of the exemption is not on whether the motor carrier actually obtains or engages in interstate business, but whether the carrier solicits such business.").

However, DOT jurisdiction does not attach if there is no possibility that the individual driver will drive interstate or if the possibility of interstate driving is remote. See Garcia v. Pace Suburban Bus Serv., 955 F. Supp. 75, 77 (N.D. Ill. 1996) ("jurisdiction extends only to drivers who reasonably could be expected to make one of the carrier's interstate runs, and that means more than a remote possibility"); Kimball v. Goodyear Tire & Rubber Co., 504 F. Supp. 544, 549 (E.D. Tex. 1980) (truck drivers were not exempted from the overtime provisions where only 0.17% of trips were interstate); Coleman v. Jiffy June Farms, Inc., 324 F. Supp. 664, 670 (S.D. Ala. 1970) (drivers were not subject to motor carrier exemption where only 0.23% of the activity was interstate); Barker v. Billo, No. 82-1548, 1984 WL 3171 (E.D. Wis.

May 1, 1984) (motor carrier exemption did not apply when less than one percent of the tows made by the plaintiffs were interstate); 29 C.F.R. § 782.3 (driver is not exempt if his job never involves transportation in interstate commerce).

In this case, it is undisputed that the drivers operated entirely within the State of Minnesota from May 2001 to October 2002. Moreover, eleven former drivers declare that they never drove out of state, did not know of any other drivers who drove out of state from May 2001 to October 2002, and were never informed that they were subject to drive out of state.

Nevertheless, Defendants argue that the drivers fall within the jurisdiction of the DOT because the drivers could have been called upon in the regular course of their employment to make trips affecting interstate commerce. The evidence demonstrates that drivers conducted several out-of-state trips from June 1998 and September 2000.[3] It also reveals that drivers hauled sand from Wisconsin to Minnesota in May 2005. In addition, Defendant Gary Bauerly avers that he solicits contracts that involve the transport of goods in interstate commerce, and informs prospective contractors that the drivers could and would transport goods out of the State of Minnesota. Notably, however, the record does not reflect whether Defendants solicited or obtained business involving the interstate transport of goods during the audit

---

[3] In his deposition, Defendant Gary Bauerly stated that he believed that two employees drove trucks in Dresser, Wisconsin in "2001, 2002" but could not recall the specific dates. (See Durr Aff. Ex. 1 at 107-08 (Bauerly Dep.).) In a subsequent declaration, he clarified that the trips occurred in September 2000. (See Apr. 22, 2005, Bauerly Decl. ¶ 8.)

period.[4]

    2.    <u>Actually Regulated</u>

Defendants also maintain that the drivers were actually regulated by the DOT during the audit period. They present evidence that the DOT requires that their drivers pass a bi-annual physical, possess a Class B Commercial Drivers License, complete daily vehicle inspections, and pass drug screening tests. In addition, the DOT requires that Defendants maintain employee and maintenance files. Moreover, the DOT regularly performs audits of those records. This evidence indicates that the DOT currently regulates Defendants. <u>See</u> <u>Thomas v. Wichita Coca-Cola Bottling Co.</u>, 968 F.2d 1022, 1026 (10th Cir. 1992) (relying on evidence that drivers complied with DOT regulations concerning preemployment physicals, log books, driving tests, and drug tests); <u>Brennan v. Schwerman Trucking Co. of Va., Inc.</u>, 540 F.2d 1200, 1204 (4th Cir. 1976) (finding that DOT had exercised power to regulate by setting the qualifications and maximum hours of service for drivers); <u>Garcia</u>, 955 F. Supp. at 77-78 (same).

However, a factual dispute exists as to whether the drivers identified in the DOL audit were ever subject to DOT requirements. On one hand, two drivers who submitted affidavits in

---

[4] Defendants also contend that the DOL admits that Defendants operate in interstate commerce based on Plaintiff's Statement of Facts, which states: "Employees regularly handle goods that have moved in interstate commerce, e.g., trucks, gasoline, oil and tires." However, Defendants misconstrue the statement. Although Defendants use materials that have been moved in or produced for commerce, that does not equate to Defendants moving goods in interstate commerce. <u>See</u> 29 C.F.R. § 782.7(a) (the interstate commerce requirements of the motor carrier exemption are not necessarily met by establishing that an employee is engaged in commerce within the meaning of the FLSA).

support of the DOL declared that the DOT inspected their vehicles during the audit period. (See Mansfield Aff. Ex. 2H ¶ 28; id. Ex. 2I ¶ 42.)  This clearly indicates that the DOT determined that these drivers were within its jurisdiction during the audit period.  On the other hand, some drivers declared that they were never required to submit to a drug test. (See, e.g., Mansfield Aff. Ex. 2F ¶ 2; id. Ex. 2G ¶ 7; id. Ex. 2J ¶ 2.)

In Dole v. Circle "A" Constr., Inc., 738 F. Supp. 1313, 1322-23 (D. Idaho 1990), the district court faced a similar situation.  In that case, the DOT had conducted two safety audits of the defendant's operations, which revealed that at least six of the defendant's drivers were subject to the Federal Motor Carrier Safety Regulations. Id. at 1317.  The defendant argued that all of its drivers fell within the DOT's regulatory ambit because the DOT undertook the compliance reviews.  Conversely, the DOL argued that the motor carrier exemption should apply only to the drivers expressly subject to DOT regulation and that the balance of the employees — who undisputably drove only intrastate — should be entitled to overtime under the FLSA. Id. at 1318.  Ultimately, the Court determined that the defendant failed to show that all of its employees were plainly and unmistakably subject to DOT jurisdiction. Id. at 1319-20.

The same is true here.  The Court is not satisfied that Defendants have met their burden of presenting sufficient undisputed facts that establish that all the drivers covered by the DOL audit were regulated by the DOT during the relevant time period.

**CONCLUSION**

A genuine issue of material fact remains as to whether Defendants compensated their drivers for all hours worked predominantly for Defendants' benefit.  In addition, the Court is

unable to determine the applicability of the motor carrier exemption because the Court cannot conclusively determine whether Defendants indeed obtained or solicited interstate business during the audit period. Thus, a genuine issue of material fact remains whether the drivers identified in the DOL audit were subject to the jurisdiction of the DOT. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No. 52) is **DENIED**.

The Court is scheduled to hear oral argument on Plaintiff's Cross-Motion for Summary Judgment on August 4, 2005. It is cognizant that Plaintiff has also moved for summary judgment on the applicability of the motor carrier exemption. The Court therefore orders the parties to submit a complete record as to whether Defendants obtained or solicited interstate business during the relevant audit period.

Dated: July 14, 2005

/s Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge