UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elaine Chao, Secretary of Labor,  
United States Department of Labor,

Civ. File No. 03-6200 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Gary Bauerly, LLC, d/b/a Watab Hauling, and Gary Bauerly, an individual,

Defendants.

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Elaine Chao is the Secretary of Labor for the United States Department of Labor ("DOL"), the federal agency charged with administering and enforcing the Fair Labor Standards Act ("FLSA"). Defendant Gary Bauerly, LLC is the holding company that owns and operates Defendant Watab Hauling. Defendant Gary Bauerly is the chief executive officer and majority owner of Gary Bauerly, LLC.

In October 2002, the DOL commenced an investigation of employment practices at Watab Hauling for the period of May 19, 2001, to October 12, 2002. After reviewing employment records and interviewing employees, the DOL determined that Defendants had violated the minimum wage and overtime compensation provisions of the FLSA. In particular, the DOL determined that Defendants withheld minimum wage compensation due to four employees in the total amount of $1,959.34. Additionally, the DOL concluded that Defendants

failed to pay employees for all hours worked, which resulted in Defendants withholding a total of $84,880.55 in overtime compensation due to sixty-three employees.

**A.      Defendants' Operations**

Defendants operate a trucking company that hauls construction materials, such as gravel and concrete, from a pit or other loading point to construction sites. Defendants primarily operate out of two locations in Minnesota: Sauk Rapids and Minneapolis (collectively "Parking Lots"). Drivers employed by Defendants make repeated trips to load and unload the construction materials.

   1.  Regular Activities

On a typical day, the drivers are required to report to an assigned Parking Lot to pick up the trucks that they will be driving. Upon arrival at the Parking Lots, the drivers conduct a pre-trip inspection of the trucks. The parties dispute what the pre-trip inspection entails. Defendants contend that the drivers simply take a two to three minute walk around the truck and then inspect the operation of the truck while driving. The DOL submits that pre-trip inspections usually take between five and twenty minutes, at which time the drivers check various operating systems, such as the lights, tires, oil level, and brakes, to ensure that the truck is in working condition. According to the DOL, the drivers may also grease the trucks to ensure that the dump mechanism works properly, which takes between five and forty-five minutes. Finally, the DOL maintains that the drivers are sometimes required to fuel their trucks, which takes between five and fifteen minutes. Defendants submit that shop personnel — and not the drivers — are responsible for maintaining and greasing the trucks.

After performing the pre-trip activities, the drivers drive from the Parking Lots to the first job site, where they pick up their initial load. The drive time from the Parking Lots to the first job site varies from fifteen minutes to one and one-half hours, depending on the distance and traffic. After arriving at the job site, the drivers sometimes must wait between ten and fifty minutes to pick up their loads. After dumping their last load, the drivers return their trucks to the Parking Lots. Defendants contend that the drivers are not responsible for any tasks once they return the trucks. Conversely, the DOL maintains that the drivers sometimes must fuel, grease, and clean the trucks at that time.

2. <u>Other Activities</u>

The DOL presents evidence that some drivers also performed other duties. For example, when a truck breaks down, the driver must stay with the truck or drive the truck to a maintenance shop. Drivers allegedly were not paid for the time spent driving the truck to and from the maintenance facility, or for the time waiting for the truck to be serviced. In addition, some drivers are responsible for driving a fuel truck between Minneapolis and Sauk Rapids, and for fueling trucks. However, the drivers purportedly were not paid for that time. In addition, a job is rained out occasionally, and drivers allegedly were not paid for pre- and post-shift activities, drive time to and from the job site, or time spent waiting for the weather to clear.

3. <u>Interstate Driving</u>

The drivers operated entirely within the State of Minnesota during the audit period of May 2001 to October 2002. In addition, eleven former drivers declare that they never drove

out of state, did not know of any other drivers who drove out of state during the audit period, and were never informed that they were subject to drive out of state.

However, some drivers conducted several out-of-state trips between June 1998 and September 2000. Other drivers hauled sand from Wisconsin to Minnesota in May 2005. In addition, from 1998 through 2003, Defendants had a contract to provide hauling services to Federal Emergency Management Agency sites — both in and out of Minnesota.

Furthermore, Defendants solicited additional interstate driving contracts during the audit period. Since 1997, Defendant Gary Bauerly has solicited contracts that involve transporting goods in interstate commerce by informing prospective contractors that the drivers could and would transport goods out of the State of Minnesota and by requesting interstate contracts from the contractors. Similarly, Defendants contacted the Florida and Arizona State Highway Departments in 2000 and 2001 to obtain a list of vendors who provided highway construction services to those states and subsequently solicited work on behalf of those vendors.[1]

**B.      Determining Hours Worked and Compensation**

Defendants maintain that they paid the drivers for all hours worked. According to Defendants, the company derived the time worked from two different sources during the audit period: haul sheets and shop sheets. Haul sheets recorded time spent loading and unloading the

---

[1] The Court notes that Defendants supplemented the record with evidence of interstate activities after the Court denied their Motion for Summary Judgment and instructed the parties to submit a complete record as to whether Defendants obtained or solicited interstate business during the relevant audit period. (See July 15, 2005, Decl. of Gary Bauerly.)

truck. Thus, the start time was the time the driver picked up the first load and the stop time was the time that the last load was dumped. Shop sheets were used to capture all other time the drivers spent working on behalf of the company, including activities relating to maintaining and inspecting the trucks. At the end of each pay period, the company added the driver's time from the haul sheets and the shop sheets and then paid the drivers for the combined hours at their regular pay rate for all hours up to forty hours per week. If a driver worked more than forty hours per week, the company paid the driver one and one-half times the regular pay rate for those hours. In contrast, the DOL contends that Defendants did not pay for hours not recorded on the haul slips. It submits that the drivers used shop sheets only for tasks performed at the Sauk Rapids shop, and did not record any of the pre- or post-trip activities on these forms.

Since October 2002, Defendants have used an additional time sheet to record time spent traveling on behalf of the company to ensure that drivers record and are paid for travel time. Thus, Defendants now use haul sheets, shop sheets, and travel time sheets to determine the hours worked by each driver. Defendants pay the drivers minimum wage for time traveling to and from the job site. If a driver works more than forty hours per week, Defendants pay the driver a blended rate, which is one and one-half times the weighted average of the hours worked at the hauling rate and the hours worked at the travel rate. The DOL submits that this pay scheme violates the overtime provisions of the FLSA.

**C.    Recordkeeping**

The DOL claims that Defendants did not keep records of the time spent engaged in pre- and post-trip activities. It further maintains that Defendants discouraged the drivers from

5

accurately recording their time, and informed the drivers that they would be paid only for hauling time. (Mansfield Aff. Ex. 2B ¶¶ 61-62; id. Ex. 2I ¶ 17; id. Ex. 2J ¶¶ 52, 55; id. Ex. 2K ¶¶ 42-43.) In addition, the DOL submits that some drivers were not paid for pre- and post-trip activities despite efforts by the drivers to record that time. (Id. Ex. 2E ¶ 26.)

Defendants deny these allegations, and assert that the company office manager maintains all time sheets and wage records. In addition, Defendants contend that those records demonstrate that Defendants paid the drivers for all hours that the drivers recorded for work activities. (Durr Aff. Ex. 1 at 139, 168 (Gary Bauerly Dep.); id. Ex. 4 at 14-15, 32-33 (Patricia Bauerly Dep.).)

**D.    This Action**

The DOL commenced this action alleging that Defendants violated the FLSA by (1) failing to pay employees the minimum wage for all hours worked; (2) failing to pay employees overtime for all hours worked in excess of forty hours per week; and (3) failing to keep and preserve adequate records of the hours worked by employees. (Compl. ¶¶ V-VII.) It seeks injunctive relief, as well as compensatory and liquidated damages.

Defendants previously filed a Motion for Summary Judgment, arguing that the undisputed facts show that the employees were paid for all hours worked and that the FLSA's overtime pay requirements do not apply by virtue of the motor carrier exemption set forth in 29 U.S.C. § 213(b). On July 14, 2005, the Court denied Defendants' Motion. It reasoned that a genuine issue of material fact remained as to whether Defendants compensated the drivers for all hours worked. In addition, the Court was unable to determine the applicability of the

motor carrier exemption because the record did not reflect whether Defendants had obtained or solicited interstate business during the audit period.

Plaintiff now brings this Motion, asking the Court to grant it summary judgment on the issues of liability, compensatory and liquidated damages, and injunctive relief.

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.    Training Reimbursement Agreement**

The DOL seeks summary judgment that Defendants violated 29 U.S.C. § 206 by withholding the final paychecks of four drivers. Defendants require newly hired drivers to sign a training reimbursement agreement, which requires a driver to reimburse Defendants $750.00 for the cost of initial training if the driver ceases employment within one year of hiring. (Mansfield Aff. Ex. 3.) Under the agreement, the cost is paid by withholding the amount from the driver's final paycheck. (Id.) In accord with the agreement, Defendants withheld the final paychecks for four drivers who terminated their employment before their one-year anniversary. The DOL submits that the withholding of the paychecks resulted in the drivers being paid less than the minimum wage for the applicable workweeks. Based on a review of Defendants' payroll records, the DOL computed that Defendants owed a total of $1,959.34 in back wages. Defendants admit that they withheld the amounts from the four drivers.

Employees cannot abridge or waive their rights under the FLSA. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704-05 (1945); see also Reich v. Stewart, 121 F.3d 400, 407 (8th Cir. 1997) (substantive right afforded by FLSA cannot be waived). Employees must be paid at least the statutory minimum wage for each hour worked. 29 U.S.C. § 206(a)(1). An employer may not reduce a worker's wage below the statutory minimum to collect a debt to the employer. Calderon v. Witvoet, 999 F.2d 1101, 1107 (7th Cir. 1993). Thus, to the extent that the training reimbursement agreement withheld minimum wages for the hours worked by the employees during their final pay period, the agreement violates the FLSA and is unenforceable. The DOL's Motion as it relates to this issue is granted.

However, the FLSA only guarantees the right to minimum wage. 29 U.S.C. § 206(a)(1).

A review of the payroll records indicates that the amount withheld was based on the drivers' regular rate of pay — and not minimum wage. (<u>See</u> Mansfield Aff. Ex. 9.) Accordingly, Defendants are ordered to pay the drivers minimum wage for the hours worked during their last pay period.

The DOL also seeks liquidated damages for these drivers. The FLSA provides for liquidated damages equal to the amount of actual damages. <u>See</u> 29 U.S.C. § 216(b). "An award of liquidated damages is intended in part to compensate employees for the delay in payment of wages owed under the FLSA." <u>Braswell v. City of El Dorado</u>, 187 F.3d 954, 957 (8th Cir. 1999) (internal quotations and citation omitted). An award of liquidated damages is mandatory unless the employer can show that it acted in good faith and had reasonable grounds to believe that it was not violating the FLSA. 29 U.S.C. § 260; <u>Jarrett v. ERC Properties, Inc.</u>, 211 F.3d 1078, 1083 (8th Cir. 2000) (citation omitted). Despite this affirmative burden, Defendants have offered no evidence that it acted reasonably and in good faith. Accordingly, the Court awards the four drivers liquidated damages equal to the amount of minimum wage compensation due.

**C.     Individual Liability**

The DOL seeks to hold Gary Bauerly individually liable for damages under the FLSA. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This language plainly includes persons other than the employer itself and contemplates several simultaneous employers who may be responsible for compliance with the FLSA. <u>Falk v. Brennan</u>, 414 U.S. 190, 195 (1973).

Although the Eighth Circuit Court of Appeals has not expressly ruled on the issue of individual liability under the FLSA, other circuits consistently recognize that a corporate officer with operational control of a company is an employer and may be jointly and severally liable for unpaid wages. See, e.g., Dole v. Elliott Travel & Tours, 942 F.2d 962, 965-66 (6th Cir. 1991); Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983); see also Rockney v. Blohorn, 877 F.2d 637, 642-43 (8th Cir. 1989) (implicitly recognizing that the FLSA permits suits against employers in their individual capacities).

Gary Bauerly owns ninety-eight percent of Gary Bauerly LLC, the holding company that owns Watab Hauling. As chief executive officer, he oversees the company's business operations, including hiring and firing decisions, establishing pay rates, and determining methods of payment. As a matter of law, Gary Bauerly is individually liable as an employer under the FLSA. The DOL's Motion on this point is granted.

**D.   Hours Worked**

The DOL seeks summary judgment that Defendants violated the minimum wage and overtime compensation provisions by failing to compensate the drivers for numerous activities performed before and after hauling. Defendants maintain that several questions of fact remain on this issue.

The FLSA requires employers to pay each of their employees the minimum wage rate. 29 U.S.C. § 206(a)(1). There is no dispute that the drivers must be paid for activities they performed for the benefit of the company. See Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) (time spent on activities performed for the benefit of the employer are compensable);

see also Steiner v. Mitchell, 350 U.S. 247, 256 (1956) (pre-shift and post-shift activities are compensable if the activities are "an integral and indispensable part of the principal activities for which covered workmen are employed"); Barrentine v. Ark.-Best Freight Sys., Inc., 750 F.2d 47, 50 (8th Cir. 1984) (pre-trip safety inspection activities are an integral part of the driving activity and are therefore considered compensable); Herman v. Rich Kramer Constr., Inc., 163 F.3d 602, 602 (8th Cir. 1998) (table op.) (driving to job sites is compensable as a principal activity); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721, 725 (5th Cir. 1961) (activities of servicing truck each morning, driving it from truck yard to prime contractor's plant for loading, waiting in line for loading, returning to truck yard from place where last load was dumped each day, and cleaning up and refueling truck were integral part of and indispensable to main job of truck drivers); Mitchell v. Stewart Bros. Constr. Co., 184 F. Supp. 886, 894-95 (D. Neb. 1960) (pre- and post-trip activities indispensable part of the principal activities for road work machine operators and therefore compensable); 29 C.F.R. § 785.15 (waiting is an integral part of the job when the employee is unable to use the time effectively for his own purposes).

Nonetheless, the parties dispute whether Defendants paid the drivers for all hours worked. The DOL maintains that Defendants paid the drivers for only actual hauling time, and submits evidence that drivers performed pre- and post-trip activities for which they were not compensated. This evidence indicates that the drivers were not paid for the time spent conducting the pre-trip inspection, greasing, or fueling the trucks. It further demonstrates that the drivers were not paid for the time spent driving from the Parking Lots to the job site, for

11

the time that passed while the drivers waited for their loads, for the travel time back to the Parking Lots, or for any of the tasks completed after the drivers dumped their last load. The DOL also presents evidence that some drivers recorded the time spent in pre-trip activities, but were not paid for those hours.

In contrast, Defendants maintain that the drivers were paid for every hour recorded, and that it was the drivers' responsibility to ensure that all compensable time was recorded. In addition, Defendant Gary Bauerly testified that the drivers are not responsible for many of the pre- and post-trip activities allegedly performed, including performing maintenance, fueling, greasing, or washing the trucks. Defendants further contend that the drivers were paid for these activities — as long as the drivers recorded their time. Defendants also dispute the amount of time allegedly spent on each activity.[2]

These factual disputes preclude finding as a matter of law whether Defendants paid the drivers for all compensable time worked. Accordingly, the DOL's Motion on this point is denied.

**D.    Overtime Compensation**

The DOL maintains that the time the drivers spent on pre- and post-trip activities caused the drivers to work more than forty hours per week. It has computed that Defendants owe

---

[2] For example, the parties dispute how long and what examinations were needed to complete a pre-trip inspection. Several drivers averred that they spent five to twenty minutes performing pre-trip inspections, which entailed checking various operating systems and sometimes greasing or fueling the trucks. In contrast, Defendants maintain that the pre-trip inspection lasted no more than two to three minutes, and that the inspection consisted merely of assessing the condition of the tires and physical frame of the truck.

$84,880.55 in overtime back wages during the audit period. Defendants contend that the drivers fall within the Motor Carrier Act and are therefore exempt from the overtime requirements of the FLSA.

The overtime provision of the FLSA requires an employer to pay an employee one and one-half times his regular rate of pay for hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a). However, Congress expressly exempted from the overtime provision employees for whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service under the Motor Carrier Act.[3] 29 U.S.C. § 213(b)(1). Courts narrowly construe the motor carrier exemption against the employer. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392-94 (1960). Thus, the employer bears the burden of proving that the exemption applies clearly and unmistakably. Id.

The Secretary of Transportation need not actually exercise its power to regulate under the Motor Carrier Act. Morris v. McComb, 332 U.S. 422, 437-38 (1947). Rather, the motor carrier exemption applies so long as the Secretary of Transportation has authority over a particular category of employees. Id. at 434; Levinson v. Spector Motor Serv., 330 U.S. 649, 673 (1947); Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 (1944); see also 29 C.F.R. § 782.1(a). To establish the applicability of the motor carrier exemption, Defendants must show

---

[3] Congress enacted the Motor Carrier Act to promote efficiency, economy, and safety in the motor transportation industry. United States v. Am. Trucking Ass'n, Inc., 310 U.S. 534, 538-39 (1940). To preserve the safety program promoted by the Motor Carrier Act, Congress prohibited dual regulatory jurisdiction of the Department of Transportation and the DOL by exempting from the FLSA overtime provision those employees for whom the Department of Transportation may set maximum hours of service. Levinson v. Spector Motor Serv., 330 U.S. 649 (1947).

that: (1) the Secretary of Transportation had the authority to establish the drivers' qualifications and maximum hours; (2) the drivers engaged in activities that directly affected the safe operation of motor vehicles on public highways; and (3) the drivers transported passengers or property on public highways in interstate commerce. See 29 C.F.R. § 782.2(a)-(b)(2).

The Secretary of Transportation may establish the qualifications and maximum hours for all motor carriers. 49 U.S.C. § 31502(b). Defendants clearly are motor carriers, as they provide motor vehicle transportation for compensation. 49 U.S.C. § 13102(12). Moreover, there can be no dispute that the drivers were engaged in activities that directly affect the safety and operation of the trucks. See Benson v. Universal Ambulance Serv., Inc., 675 F.2d 783, 786 (6th Cir. 1982); 29 C.F.R. § 782.3. Thus, the threshold issue is whether Defendants operated in interstate commerce during the relevant time period, thereby falling within the ambit of the Department of Transportation ("DOT"). See 29 C.F.R. § 782.2(d) (the exemption requires drivers to be engaged in interstate transportation).

The DOT has explained what evidence is needed to establish jurisdiction:

> The carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof . . . that interstate business had been solicited. If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs. Satisfactory evidence would be statements from drivers and carriers, and any employment agreements.

Application of the Federal Motor Carrier Safety Regulation, 46 Fed. Reg. 37902-02 (July 23, 1981) (to be codified at 49 C.F.R. Part 390).

Participation in interstate commerce need not be significant.  Even minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the DOT.  See 29 U.S.C. § 782.2(b)(3).  In fact, even if the driver has not personally driven in interstate commerce, he will be subject to the jurisdiction of the DOT if the driver could be reasonably expected to do interstate driving.  Levinson, 330 U.S. at 674-75 ("It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power to establish reasonable requirements with respect to qualification, maximum hours of service, safety of operation and equipment."); 29 C.F.R. § 782.1(a); 46 Fed. Reg. 37902-02 ("even a minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the" DOT).  In determining whether the drivers had reasonable expectations of interstate driving, courts look at whether the carrier conducted interstate work or whether the carrier actively attempted to obtain interstate work during the period in question.[4]  See Morris v. McComb, 332 U.S. 422, 432-36 (1947); Brennan v. Schwerman Trucking Co. of Va., Inc., 540 F.2d 1200 (4th Cir. 1976); Starrett v. Bruce, 391 F.2d 320 (10th Cir. 1968).

---

[4] Evidence that an employee drove in interstate commerce or was subject to being used in interstate commerce is sufficient to exempt the employee for a four month period.  See 46 Fed. Reg. 37902-02.

For example, in Brennan, the Fourth Circuit Court of Appeals found that a carrier that held itself out as available for interstate cartage, solicited interstate business, and handled interstate shipments was subject to the jurisdiction of the DOT and therefore exempted from the provisions of the FLSA.  540 F.2d at 1203-04; see also Smith v. United Parcel Serv., Inc., 890 F. Supp. 523, 526 (S.D. W. Va. 1995) ("The focus of the exemption is not on whether the motor carrier actually obtains or engages in interstate business, but whether the carrier solicits such business.").

However, DOT jurisdiction does not attach if the possibility of interstate driving is so remote that the driver cannot reasonably expect to make an interstate run.  See Garcia v. Pace Suburban Bus Serv., 955 F. Supp. 75, 77 (N.D. Ill. 1996); see also Kimball v. Goodyear Tire & Rubber Co., 504 F. Supp. 544, 549 (E.D. Tex. 1980) (truck drivers were not exempted from the overtime provisions where only 0.17% of trips were interstate); Coleman v. Jiffy June Farms, Inc., 324 F. Supp. 664, 670 (S.D. Ala. 1970) (drivers were not subject to motor carrier exemption where only 0.23% of the activity was interstate); Barker v. Billo, No. 82-1548, 1984 WL 3171 (E.D. Wis. May 1, 1984) (motor carrier exemption did not apply when less than 1% of the tows made by the plaintiffs were interstate); 29 C.F.R. § 782.3 (driver is not exempt if his job never involves transportation in interstate commerce).

It is undisputed that no drivers made an interstate run during the audit period. Nevertheless, Defendants argue that the drivers fall within the jurisdiction of the DOT because the drivers could have been called upon in the regular course of their employment to make trips affecting interstate commerce.  The Court agrees.  Undisputed evidence shows that Defendants

have solicited business involving interstate transportation since 1997, and obtained a contract to haul materials both in and out of Minnesota during the relevant time period.

The DOL argues that "it strains credibility" that Defendants would seek work in "such diverse and distant states." (Pl.'s Reply Mem. at 13.) In addition, it notes that Defendants merely submitted a declaration describing the solicitations, and did not produce documentary evidence to corroborate the declaration. Nonetheless, the DOL presents no evidence to refute the declaration that Defendants made these solicitations. It therefore fails to create a genuine issue of material fact. See Fed. R. Civ. P. 56(c) (the Court may consider affidavits and other evidence to determine whether summary judgment is appropriate).

Based on the activities described by Defendants, the Court finds that Defendants have established that they solicited interstate commerce during the relevant time period. Consequently, Defendants have established that the motor carrier exemption applies and that they therefore are exempt from the overtime requirements of 29 U.S.C. § 207. Accordingly, the Court denies the DOL's Motion on this point and grants summary judgment in favor of Defendants on the overtime compensation claim.[5]

### E.     Recordkeeping

An employer must make and preserve records of the "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). The DOL contends that Defendants failed to retain records for all hours worked by the drivers. Specifically, the DOL submits that

---

[5] Because the Court finds that Defendants are exempt from the overtime compensation requirements of 29 U.S.C. § 207, it need not rule on whether Defendants' weighted average method of paying overtime violates the FLSA.

Defendants did not keep records of the pre- and post-trip activities performed by the drivers. Yet, the DOL simultaneously asserts that Defendants dissuaded the drivers from recording such time. Defendants deny these allegations, and present evidence that they retained all haul sheets, shop sheets, and travel time sheets submitted by the drivers. The DOL has presented no evidence that Defendants discarded or destroyed any of these records, and has failed to otherwise establish as a matter of law that Defendants violated § 211. Because Defendants demonstrate that an issue of fact remains, the DOL's Motion on this point is denied.

**CONCLUSION**

The DOL has established as a matter of law that Defendants violated 29 U.S.C. § 206 by failing to pay four former employees minimum wages for hours worked during the employees' last pay periods. Likewise, the DOL has established that Defendants are liable for liquidated damages equal to the amount of minimum wages earned during those periods. In addition, the DOL has established that Defendant Gary Bauerly is an "employer" as defined by 29 U.S.C. § 203(d), and therefore is jointly and severally liable for the unpaid wages.

Defendants have established that the motor carrier exemption to 29 U.S.C. § 207 applies and that they are therefore exempt from the overtime compensation provision. Finally, genuine issues of material fact remain as to whether Defendants compensated sixty-three drivers for all hours worked predominantly for Defendants' benefit, and whether Defendants violated the record retention requirements set forth in 29 U.S.C. § 211(c) and 29 C.F.R. § 516. Consequently, a ruling on damages and injunctive relief relating to those issues is premature.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 67) is **GRANTED in part** and **DENIED in part**.

Dated: August 11, 2005

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge
